IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED
OCT 26 2016
Clerk, U.S. District Court
District Of Montana
Billings

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PHILIP ALLAN MORRIS,<br><br>Defendant. | CR 15-14-BLG-SPW<br><br>OPINION & ORDER |

Defendant Philip Allan Morris ("Morris") is charged with Possession With Intent to Distribute Methamphetamine and Possession of a Firearm in Furtherance of a Drug Trafficking Crime. (Doc. 3). He has moved, under the Fourth Amendment and Fed. R. Civ. P. 41, to suppress evidence found during a search of his vehicle. (Doc. 31). The search was authorized by a search warrant issued from the 13th Judicial District Court, Yellowstone County, Montana. (Doc. 33-3).

On September 30, 2016, and October 7, 2016, the Court held an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The Court heard testimony from Laurel City Police Officer James Huertas, Yellowstone County Sheriff's Deputy Patrick Korb, Laurel City Police Officer Kyle Bryant, Laurel City Police Officer Travis Pitts, Drug Enforcement Administration Special Agent Mike Zidack, and Morris. Having read and reviewed the parties' submissions and

1

having heard the testimony of the witnesses noted above, the Court DENIES Morris's motion.

## I. Facts as stated in the search warrant application.

On February 3rd, 2015, Laurel City Police Officer James Huertas pulled Morris over for driving westbound in the eastbound lanes of I-90 near Laurel, MT, around 3 AM. Morris was driving a 2006 Dodge Ram pick-up truck with North Dakota plates. Markings on the rear of the vehicle indicated the vehicle was a rental from North Dakota. Officer Huertas approached the vehicle and made contact with Morris. Morris did not know he was driving westbound in the eastbound lanes. Morris told Officer Huertas he was coming from Lockwood, and responded "no" when Officer Huertas asked if he had traveled from a farther distance. Officer Huertas was able to observe some of the interior of the vehicle. Officer Huertas observed at least five air fresheners attached to several ac/heater vents. Officer Huertas observed a clutter of personal items and trash. The clutter led Officer Huertas to believe Morris had been in the vehicle for long periods of time on long trips.

Officer Huertas suspected Morris of driving under the influence and asked Morris to exit the vehicle. Officer Huertas administered the Horizontal Gaze Nystagmus (HGN) test to Morris and observed four out of six clues. Officer Huertas decided to read the Preliminary Alcohol Screening Test (PAST) advisory

to Morris based on Morris driving the wrong way and Officer Huertas observing four out of six clues during the HGN test. Morris agreed to take the PAST and received a result of .052% BAC. Officer Huertas placed Morris under arrest for DUI. Morris responded "no" to Officer Huertas' request to search the vehicle.

Officer Huertas believed the vehicle contained contraband based on the out of state rental, the air fresheners, the vehicle clutter, and because Morris lived locally but was driving the wrong way on the interstate with a "relatively low" BAC. Officer Huertas requested a tow truck to respond. Yellowstone County Sherriff's Deputy Korb arrived on scene and maintained security over the vehicle. The vehicle was then towed to the City of Laurel Impound Yard and Shop.

At some point, Morris told Officer Huertas he had not eaten or slept in over 24 hours. This led Officer Huertas, a Drug Recognition Expert, to believe Morris was under the influence of a central nervous system stimulant and was not able to operate a motor vehicle safely. Officer Huertas charged Morris with Driving on Other Than the Right Side of a Divided Highway, Driving Under the Influence of Alcohol/Drugs, and Criminal Endangerment.

Deputy Korb pointed out several reports in the local criminal "Global" database indicating Morris had been transporting methamphetamine between California, Billings, and the Bakken Oil Field. The rap sheet for Morris indicated many years of arrests for possession and distribution of LSD, meth, and cocaine.

At the time of Morris's arrest, he was in possession of a receipt from a California Burger King dated 1/31/15 at 9:40 AM, approximately 68 hours prior to his arrest.

Based on the above facts, Officer Huertas applied for, and was granted, a warrant to search Morris's vehicle.

## II. Law.

In the face of allegations that a search warrant affidavit contained inaccurate information affecting probable cause, district courts apply a two-step analysis to determine whether a search warrant was supported by probable cause. *U.S v. Elliot*, 322 F.3d 710, 714 (9th Cir. 2003). First, after holding a *Franks* hearing, the district court must determine whether any "erroneous statements or omissions" in the search warrant affidavit "were made knowingly and intentionally, or with reckless disregard for the truth." *Elliot*, 322 F.3d at 714. Second, if the district court so finds, it must then determine whether "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Elliot*, 322 F.3d at 714. What sustains the warrant must already be within it; that probable cause did exist and could have been established by a truthful affidavit does not cure the error. *Baldwin v. Placer County*, 418 F.3d 966, 971 (9th Cir. 2005). The defendant bears the burden to prove his allegations by a preponderance of the evidence. *U.S. v. DeLeon*, 955 F.2d 1346, 1348 (9th Cir. 1992).

A district court's findings on whether any statements were false or omitted and whether any such statements were intentionally or recklessly made are reviewed for clear error. *Elliot*, 322 F.3d at 714. A district court's determination of whether probable cause is lacking because of material misstatements and omissions in the supporting affidavit is reviewed de novo. *Elliot*, 322 F.3d at 714. Whether any misstatements or omissions are material is a mixed question of law and fact reviewed de novo. *Elliot*, 322 f.3d at 714.

## III. Discussion.

### A. Factual findings on alleged misstatements and omissions.

Morris challenges the validity of the search warrant, alleging Huertas' application omitted the following facts:

(1) Montana Highway Patrol conducted a K-9 search of the vehicle with zero positive alerts;

(2) Most of Morris's arrests for possession and distribution ended with no conviction;

(3) Huertas entered the vehicle briefly with a flashlight and did not observe any drugs or paraphernalia during the investigation;

(4) Morris presented a commercial driver's license but was driving a noncommercial vehicle, so Huertas did not have probable cause to arrest Morris for DUI with a BAC of .052%;

(5) Huertas did not wait 15-20 minutes before administering the PAST which compromised the result; and

(6) Huertas administered the HGN test next to the flashing squad car lights, which comprised the results.

Morris also alleges the application misstated that there were multiple reports of Morris trafficking meth from California to Billings and the Bakken Oil Field. The Court addresses each alleged omission and misstatement in turn.

### 1. The omission of the K-9 search was not intentional or reckless because Officer Huertas did not know the K-9 search occurred until after the warrant was granted.

The Court finds Officer Huertas did not know the K-9 search occurred until after the warrant was granted. Based on the testimony, the Court finds the following timeline occurred: Towards the end of his shift, around 7:00 AM, Officer Huertas left a message with the Montana Highway Patrol that he had impounded Morris's vehicle and if a K-9 Unit was available, "to come on over." Officer Huertas did not hear back from the Highway Patrol. He drafted his search warrant application and then went home to Billings to sleep, taking the application with him. Around 1:00 PM, Trooper Mees from the Montana Highway Patrol arrived at the Laurel PD impound lot. Trooper Mees and his K-9 Unit conducted a perimeter search of Morris's vehicle without any positive alerts. Laurel City Police Officer Kyle Bryant videotaped the K-9 search and entered a report of the

results into the Laurel PD case system sometime between 1:00 PM and 3:30 PM. Officers can only see case reports by logging into the Laurel PD case system from the Laurel PD office. Officers do not receive alerts on their phones that a new report has been made. Officer Bryant did not call or text Officer Huertas with the results of the K-9 search.

After he woke up, around 5:00 or 6:00 PM, Officer Huertas delivered the search warrant application to a judge in Billings. The judge granted Officer Huertas' application for a search warrant. Officer Huertas then returned to Laurel PD to start his shift and execute the search warrant, around 7:00 PM. At some point thereafter—either upon his return to Laurel PD or after execution of the search warrant—Officer Huertas learned the results of the K-9 search.

The omission of the K-9 search results from the search warrant application was not an intentional omission or a reckless disregard of the truth because Officer Huertas did not learn about the results of the K-9 search until after he applied for, and was granted, a search warrant. The Court will not add the omission to the application.

### 2. The omission that most of Morris's arrests did not end in conviction was a reckless disregard for the truth.

The failure to include that an arrest did not end with conviction, if known, is a reckless disregard for the truth because inclusion of the information serves to

weaken the significance of the prior arrest. *U.S. v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985).

Officer Huertas' application states "the rap sheet for Morris indicates many years of arrests for Criminal Possession of Dangerous Drugs and the Distribution of Drugs; namely LSD, Methamphetamine, and Cocaine." (Doc. 33-2 at 3). The rap sheet also establishes the arrests resulted in only two convictions, in 1998 and 2006. (Doc. 33-8 at 1-24). Officer Huertas testified that he would have seen the disposition of each arrest when he reviewed the rap sheet and that he understood there was a significant difference between an arrest and a conviction. Under *Stanert*, Officer Huertas' omission was therefore a reckless disregard for the truth. The appropriate remedy for this omission is the inclusion that Morris's arrests ended in conviction only in 1998 and 2006, not the exclusion of the statement that "the rap sheet for Morris indicates many years of arrests for Criminal Possession of Dangerous Drugs and the Distribution of Drugs; namely LSD, Methamphetamine, and Cocaine." *Stanert*, 762 F.2d at 781. The Court adds to the application that Morris's arrests ended in conviction only in 1998 and 2006.

> 3. **The omission that Officer Huertas did not observe any drugs or paraphernalia inside the vehicle is not a reckless disregard for the truth. The omission that Officer Huertas entered the vehicle briefly with a flashlight is a reckless disregard for the truth.**

Officer Huertas entered Morris's vehicle briefly to retrieve Morris's wallet and keys, which Morris requested. Officer Huertas used a flashlight when he entered Morris's vehicle. Officer Huertas acknowledged that he did not see any drug paraphernalia or smell any drugs when he entered Morris's vehicle, and that he did not include that information in the search warrant application.

The observation of drugs inside a vehicle is highly relevant information that any officer would include in an application. Search warrant applications do not typically include statements or information regarding what the officer did not see or smell. The fact that the application did not include a statement that Officer Huertas observed drugs in the vehicle is as informative as an affirmative statement that no drugs were observed. With or without the statement, the magistrate draws the same conclusion: no drugs were observed. However, the omission that Officer Huertas briefly entered the vehicle with a flashlight is a reckless disregard for the truth because it strengthens the inference drawn from the absence of an observation of drugs inside the vehicle.

The Court will not add to the application that Officer Huertas did not observe any drug paraphernalia in Morris's vehicle. The Court will add to the application that Officer Huertas entered Morris's vehicle with a flashlight to look for Morris's wallet and keys.

### 4. The omission that Morris presented a commercial driver's license but was driving a noncommercial vehicle was not a reckless disregard of the truth.

Morris argues that Officer Huertas improperly arrested Morris for DUI because, although Morris presented a commercial driver's license and had a BAC of .052%, which is above the legal limit for operators of a commercial vehicle, Mont. Code Ann. § 61-8-406(1), Morris was not operating a commercial vehicle at the time. Morris does not contest that the arrest was valid for other reasons. Instead, Morris argues Officer Huertas purposely did not state Morris was driving a non-commercial vehicle in order to mislead the magistrate that a BAC of .052% justified the arrest for DUI. However, the search warrant application does not indicate Morris was arrested for operating a commercial vehicle with a BAC over .04%. The search warrant application does not mention that Morris presented a commercial driver's license, or state whether or not Morris was driving a commercial vehicle. Therefore, Officer Huertas did not misstate the facts or recklessly disregard the truth with regard to Morris operating a non-commercial vehicle or the grounds for the DUI arrest. The Court will not add the omission to the application.

### 5. The omission that Officer Huertas did not wait 15-20 minutes before administering the PAST, which may compromise the result, was not a reckless disregard of the truth.

Officer Huertas testified that the PAST result may have been compromised because he did not wait the standard 15-20 minutes before administering the test. However, Morris fails to articulate why the artificially high PAST result was material to whether there was probable cause to search. The search warrant application itself discredits the PAST result, .052%, as "a relatively low BAC." (Doc. 33-2 at 3). Furthermore, Morris was driving on the wrong side of I-90. Accordingly, the low BAC makes the inference that Morris was under the influence of drugs stronger, not weaker. The Court will not add to the application that the PAST was administered improperly.

> 6. **The omission that Officer Huertas administered the HGN test next to the flashing squad car lights, which may compromise the results, was a reckless disregard for the truth.**

When Officer Huertas administered the HGN test, Morris stood with his back to the highway and the squad car to his right. The squad car's overhead lights were flashing. Officer Huertas testified the overhead lights could have compromised the test. The omission that the HGN test may have been compromised is a reckless disregard for the truth because the HGN test results, coupled with the low BAC, establish Morris was possibly under the influence of drugs. The Court will add to the application that the HGN test may have been compromised.

### 7. The statement that Deputy Korb pointed out several reports of Morris transporting methamphetamine between California, Billings, and the Bakken Oil Field was not a misstatement.

The search warrant application states "Deputy Korb then pointed out several reports in the local criminal 'Global' database indicating several reports of Morris transporting Methamphetamine between California, Billings, and the Bakken Oil Field." (Doc. 33-2 at 3).

The hearing testimony establishes the statement in the application concerning the reports of Morris trafficking methamphetamine between California, Billings, and the Bakken Oil Field was not a misstatement. Officer Huertas testified Deputy Korb informed him that the Global database contained reports of Morris trafficking methamphetamine between California, Billings, and the Bakken Oil Field. Officer Huertas did not personally view the reports. Deputy Korb testified he checked Morris's name for criminal history, and found a 2014 report in the Global database that Morris trafficked methamphetamine between California, Billings, and the Bakken Oil Field. The report was based on information supplied by a citizen who reported Morris obtained multiple pounds of meth each month from California. (Doc. 39-3). Deputy Korb informed Officer Huertas of the report. Deputy Korb made no inquiry into the reliability of the report. Although it may have been more accurate for Officer Huertas to state there was a report that referred to multiple instances, rather than state there were multiple reports, Officer

Huertas' testimony did not indicate the failure to note that distinction was intentional or a reckless disregard for the truth.

Morris also argues the report is unreliable. However, the unreliability of the report goes to its weight in the probable cause determination, not whether the application's statement concerning the report was a misstatement. The Court will not remove from the application the statement concerning the reports of Morris trafficking methamphetamine between California, Billings, and the Bakken Oil Field.

### B. The corrected search warrant application contains probable cause to search Morris's vehicle.

"Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The corrected search warrant application contains probable cause to search Morris's vehicle. Under the totality of the circumstances, driving the wrong way on the interstate, five air fresheners attached to the ac/heat vents, clutter that led Officer Huertas to believe Morris had been staying in the vehicle for long periods of time during a long trip, Morris's statement he hadn't slept for over 24 hours, many years of arrests for drugs that resulted in two convictions, reports that Morris trafficked methamphetamine from California to Billings and the Bakken Oil Field, and a California Burger King receipt dated 68 hours earlier outweighs a possibly

compromised HGN test and no observations of drugs by Officer Huertas, who briefly entered Morris's vehicle with a flashlight to retrieve Morris's wallet and keys.

Morris contends the report that he trafficked methamphetamine from California to Billings and the Bakken Oil Field is unreliable. However, district courts can assess many factors to determine reliability. *U.S. v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001). One factor is independent police corroboration. *Bishop*, 264 F.3d at 924. Although Officer Huertas did not include any information regarding the reliability of the report in his application, the California Burger King receipt dated 68 hours earlier, along with the other facts previously mentioned, corroborate the report that Morris trafficked methamphetamine from California to Billings and the Bakken Oil Field.

The Court holds the search of Morris's vehicle did not violate Morris's Fourth Amendment rights because the corrected search warrant application contains probable cause to search the vehicle.

### C. Fed. R. Crim. P. 41 does not apply to the search in this case because it was not federal in character.

Fed. R. Crim. P. 41 does not apply to a search performed by local officials unless the search is "federal in character." *U.S. v. Palmer*, 3 F.3d 300, 303 (9th Cir. 1993). Whether a search is "federal in character" is a factual inquiry. *Palmer*, 3 F.3d at 303. Generally, a search is federal if from the beginning it was assumed

a federal prosecution would result. *Palmer*, 3 F.3d at 303. A federal officer's "mere participation" in a search does not make it a federal one. *Palmer*, 3 F.3d at 303.

The search was not federal in character. Officer Huertas testified he had "no idea" the case would go federal when he executed the search warrant because he was "simply gathering evidence," not "building a case for federal prosecution." Officer Pitts testified he did not think a federal prosecution would result until after the methamphetamine was found. DEA Agent Zidack was not contacted until after the methamphetamine was found. Nothing in the record indicates Officer Huertas was acting as an agent for the U.S. Attorney's Office or for a federal agency. *See Palmer*, 3 F.3d at 303 (search not federal in character because investigation was initiated and controlled by the local law enforcement officials involved). Officer Huertas would likely have applied for, and executed, a search warrant regardless of any anticipated federal involvement. *See Palmer*, 3 F.3d at 303 (record showed deputies would have sought the search warrant regardless of federal agent's involvement). Although DEA Agent Zidack took possession of the evidence obtained from the search, DEA Agent Zidack's "mere participation" does not make the search a federal one. *Palmer*, 3 F.3d at 303. With no evidence in the record showing that it was assumed from the beginning that a federal prosecution would

result, the search was not federal in character and Fed. R. Crim. P. 41 does not apply.

## IV. Conclusion.

For the foregoing reasons, Morris's Motion to Suppress (Doc. 31) is DENIED.

DATED this 26th day of October, 2016.

_____
SUSAN P. WATTERS
United States District Judge